**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**DIEGO GARCIA CHANCUSI,**

**Petitioner,**

**vs.** **9:26-CV-2174 (MAD)**

**DAVID VENTURELLA, *et al.*,**

**Respondents.**

---

**APPEARANCES:** **OF COUNSEL:**

**LAW OFFICE OF KATHY MANLEY** **KATHY MANLEY, ESQ.**
26 Dinmore Road
Selkirk, NY 12158
Attorney for Petitioner

**OFFICE OF THE UNITED STATES ATTORNEY** **ALEXIS M. OSBORNE, AUSA**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorney for Respondents

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On October 22, 2026, Petitioner Diego Garcia Chancusi ("Petitioner"), through counsel, filed a petition for a writ of habeas corpus seeking relief from his detention by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement Office ("ICE"). *See* Dkt. No. 1. Petitioner identifies the following individuals as Respondents: David Venturella, in his official capacity as Acting Director of ICE; Markwayne Mullin, in his official capacity as Secretary of DHS; Todd Blanche, in his official capacity as Acting Attorney General of the

United States; and Philip Rhoney, in his capacity as Acting Field Office Director, Buffalo Field Office, ICE. *See id.*

Petitioner was detained on October 22, 2026, in Troy, New York and remains in Respondents' custody. *Id.* at ¶ 1. Petitioner requests that this Court order his immediate and unconditional release from immigration custody or, in the alternative, a bond hearing. *See id.* at ¶ 5. Petitioner alleges that his detention violates the Immigration and Nationality Act, the Administrative Procedure Act, and the due process and warrantless arrest protections afforded by the Fourth and Fifth Amendments of the United States Constitution. *See id.* at 11-13. On October 26, 2026, Respondents filed a response opposing the petition, *see* Dkt. No. 6, and the same day, Petitioner filed a reply requesting Petitioner's immediate release, *see* Dkt. No. 7.

## II. BACKGROUND

Petitioner, a national of Ecuador, alleges he entered the United States on July 27, 2023. *See* Dkt. No. 1 at ¶ 15. Petitioner was subsequently released from immigration custody pursuant to parole under 8 U.S.C. § 1182(d)(5)(A), which terminated on July 25, 2024. *See* Dkt. No. 6 at 1. Petitioner filed an application for asylum and withholding of removal on February 23, 2024, which remains pending. *See* Dkt. No. 1 at ¶ 15.

Petitioner alleges he was detained in an "apparently warrantless arrest" in Troy, New York, on October 22, 2026. *Id.* at ¶ 16. Respondents maintain that Albany ICE Enforcement and Removal Operations officers conducted a "targeted enforcement" operation that day. Dkt. No. 6 at 2; Dkt. No. 6-4 at 2. Respondents claim that the decision to re-detain Petitioner was based on his "specific conduct, unlawful status, and individualized risk factors." Dkt. No. 6 at 2. Specifically, Respondents contend that "Petitioner was the subject of the operation because his parole expired, and ICE was aware of his arrest on April 25, 2026," in Rotterdam, New York, for

driving while intoxicated with a blood alcohol content ("BAC") of 0.08% or more in violation of New York Vehicle and Traffic Law § 1192(2). *See id.*; Dkt. No. 6-4 at 3. Petitioner has no criminal convictions on record. Dkt. No. 6-4 at 3. Petitioner's parents are citizens of Ecuador. *See id.* Petitioner's mother, wife, and young children presently live in Ecuador. *See id.* at 1, 3. Petitioner has worked in Schenectady, New York for approximately two years. *See id.* at 2, 4.

Respondents allege that when the officers initiated the traffic stop on October 22, 2026, Petitioner identified himself and complied with officers' instructions. *See* Dkt. No. 6 at 2. Petitioner stated that he lives in Albany, New York, which was consistent with the address on his driver's license. *See id.* Respondents contend "officers observed [Petitioner] at a residence in Schenectady, New York" and subsequently "concluded that Petitioner is a flight risk and public safety risk." *Id.* The DHS record indicates that Petitioner was observed leaving "the target address." Dkt. No. 6-4 at 2.

Petitioner was "placed under arrest and relocated to a secondary location for service of the Form I-200, Warrant of Arrest, due to heavy traffic and the arrival of protestors." Dkt. No. 6 at 2. A Form I-213 was prepared following the encounter, which Respondents contend reflects the precise timeline of events, including the issuance and service of the Form I-200, Warrant of Arrest. *See id.* Petitioner maintains that "it appears the warrant may have been issued after the arrest." Dkt. No. 7 at 1.

## III. DISCUSSION

### A. Legal Standard

A district court may "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Veletanga v. Noem*, No. 25-CV-9211, 2025 WL 3751865, *2 (S.D.N.Y. Dec. 26, 2025) (quoting *Wang v. Ashcroft*, 320 F.3d

130, 140 (2d Cir. 2003), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4)); *see* 28 U.S.C. § 2241(c)(3). "This jurisdiction includes habeas petitions filed by immigration detainees[,]" *Padilla Molina v. DeLeon*, No. 25-CV-6526, 2025 WL 3718728, *2 (E.D.N.Y. Dec. 23, 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)), including non-citizens, *see R.P.L. v. Maldonado*, 814 F. Supp. 3d 301, 304 (E.D.N.Y. 2025) (citation omitted).

"[T]he petitioner bears the burden of proving that he is being held contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Veletanga*, 2025 WL 3751865, at *2 (internal quotation marks omitted) (quoting *Dzhabrailov v. Decker*, No. 20-CV-3118, 2020 WL 2731966, *3 (S.D.N.Y. May 26, 2020)); *see Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

**B. Statutory Authority for Petitioner's Detention**

The parties dispute the applicable statutory authority governing Petitioner's detainment. Specifically, Petitioner argues that 8 U.S.C. § 1226(a) applies. *See* Dkt. No. 1 at ¶¶ 46-48, 50, 57, 61. That provision states, in relevant part: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226, detention is discretionary where noncitizens are already in the United States. *See Gaspar v. Akshar*, No. 9:26-CV-118, 2026 WL 699369, *4 (N.D.N.Y. Feb. 17, 2026) ("[D]etention under § 1226(a) is discretionary"). Petitioner contends that § 1226 applies because he has been residing in the United States since 2023, and therefore, ICE does not have authority to mandate detention. *See* Dkt. No. 1 at ¶¶ 24-25.

Respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies. *See* Dkt. No. 6 at 2. That provision states, in relevant part: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and

beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Section 1225 mandates detention of noncitizens seeking admission into the country. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Respondents contend that ICE treated Petitioner's detention "as a return to custody following the termination of parole rather than as the revocation of a prior release determination under 1226(a)," and that ICE "conducted an individualized assessment before deciding to re-detain Petitioner." Dkt. No. 6 at 3.

In their response, Respondents acknowledge that this Court has overwhelmingly rejected DHS's position and has held that § 1226(a) applies in similar circumstances. *See id.* Indeed, the Second Circuit has held that 8 U.S.C. § 1226(a) "plainly applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 73 (2d Cir. 2026), *reh'g en banc denied*, — F.4th —, No. 25-3141, 2026 WL 2880761 (2d Cir. Sept. 25, 2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, 609 U.S. —, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026). Having reviewed the record and the recent case law in the Second Circuit on this matter, the Court finds no reason to deviate from that holding. Therefore, because Petitioner was not apprehended at the entrance of the country or shortly thereafter, but he has been charged as being inadmissible, § 1226(a) applies to his detention. *See, e.g.*, *Aguaiza-Pichazaca v. Wesling*, No. 2:26-CV-312, 2026 WL 2874705, *2-3 (D. Vt. Sept. 24, 2026); *Rea v. Ball*, No. 9:26-CV-1248, 2026 WL 1959270, *2 (N.D.N.Y. July 2, 2026); *R.J.S.R. v. Mullin*, No. 26-CV-3611, 2026 WL 1803649, *2 (E.D.N.Y. June 23, 2026); *see also Yao v. Almodovar*, 813 F. Supp. 3d 461, 468-69 (S.D.N.Y. 2025) ("[N]oncitizens . . . who [were] intercepted at the border, released on [their] own recognizance pending removal proceedings, and later detained by ICE . . .

are subject to detention under § 1226, not § 1225"); *Han v. Noem*, No. 25-CV-10753, 2026 WL 18704, *1 (S.D.N.Y. Jan. 2, 2026) (applying § 1226(a) and ruling in favor of the petitioner where petitioner was detained while living in the United States and had a pending asylum application).

In the instant case, Petitioner has resided in the United States since his arrival in July of 2023. *See* Dkt. No. 1 at ¶¶ 15, 46. In February of 2024, he filed for asylum and withholding, which remains pending. *Id.* As the Second Circuit has held, a petitioner with a pending asylum application is not applying for or "seeking admission." *See Barbosa da Cunha*, 175 F.4th at 80-81 ("Where a noncitizen like Petitioner 'does not contend that there is any basis for [his] admission to the United States,' and instead 'is requesting that the Attorney General exercise his discretion to cancel [his] removal' or provide asylum, he is not applying for (or seeking) admission").

Respondents contend that the expiration of Petitioner's parole justified ICE's decision to re-detain him. *See* Dkt. No. 6 at 5. Courts in this Circuit have concluded that "where a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226." *Ivonin v. Rhoney*, No. 6:25-CV-6673, 2026 WL 199283, *4 (W.D.N.Y. Jan. 26, 2026); *see also Hernandez Villasmil v. Blanche*, No. 9:26-CV-713, 2026 WL 1235068, *6 (N.D.N.Y. May 5, 2026) ("Petitioner, who was released into the United States on his own recognizance under humanitarian parole in 2023 and continued to reside in the United States for one year after his parole had been terminated, cannot be said to be 'seeking admission.' Therefore, he is not subject to mandatory detention . . . "); *Torrez Arce v. Blanche*, No. 9:26-CV-501, 2026 WL 1430509, *2 (N.D.N.Y. May 21, 2026) ("The Court therefore concludes that Petitioner, who was paroled into the United States approximately two years before his arrest, was

not seeking admission when he was arrested, and Section 1225(b)(2)(A) therefore does not apply").

Based upon the foregoing, the Court finds that § 1226 applies in this case.

**C. Due Process**

The Second Circuit applies the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), to evaluate whether a petitioner's detention violates due process. *See Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 335 (E.D.N.Y. 2026); *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024). The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Qureshi v. Rhoney*, No. 9:26-CV-1439, 2026 WL 2321551, *3 (N.D.N.Y. Aug. 11, 2026) (quoting *Hernandez Villasmil*, 2026 WL 1235068, at *8); *see also Mathews*, 424 U.S. at 335.

Petitioner's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Rashid v. Trump*, 807 F. Supp. 3d 349, 367 (D. Vt. 2025) (quoting *Velasco Lopez*, 978 F.3d at 851); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citations omitted). Regarding the government's interest, "courts have recognized that detention in the immigration context has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Martins v. Akshar*, 837 F. Supp. 3d 387, 397 (N.D.N.Y. 2026) (internal quotation marks omitted) (quoting *Rashid*, 807 F. Supp. 3d at 369; citing *Velasco Lopez*, 978 F.3d at 854).

In their response, Respondents address the three *Mathews* factors. *See* Dkt. No. 6 at 5. First, Respondents "recognize[]" Petitioner's private interest, but they go no further in analyzing the first factor. *Id.* The Court finds that Petitioner has a strong interest at stake. *See, e.g.*, *Velasco Lopez*, 978 F.3d at 851 ("Case after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception'").

Turning to the risk of erroneous deprivation, Petitioner's liberty is implicated by detention. The risk of erroneous deprivation is evidenced by the fact that Petitioner has been twice granted work authorization in the United States, with the latest authorization valid until November 14, 2029. *See* Dkt. No. 6-4 at 2-3. Currently, Petitioner maintains documented employment in Schenectady, New York. *Id.* ICE officers justified Petitioner's detention because they "observed" Petitioner in Schenectady, when he lives in Albany. *See* Dkt. No. 6-4 at 4. Petitioner has worked in Schenectady, New York, for approximately two years, *see id.* at 2, 4, making his presence in the city likely routine. Alternatively, he could have been visiting an acquaintance in Schenectady. These facts point to a high risk of erroneous deprivation of Petitioner's private interest if he is not afforded appropriate due process.

As to the probable value, if any, of additional or substitute procedural safeguards, Respondents contend that "imposing additional procedures through habeas would not meaningfully enhance accuracy." Dkt. No. 6 at 5. The neutrality of the individualized custody determination Respondents contend was conducted by ICE officers is questionable, as explained above. Moreover, it is unclear if the officers issued a warrant in advance of the arrest, which they were required to do. *See id.* at 2; Dkt. No. 7 at 1. "ICE must obtain a warrant before arresting a noncitizen unless the officer has reason to believe that the [noncitizen] is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for

his arrest." *Rea*, 2026 WL 1959270, at *2 (internal quotation marks omitted) (quoting *Curimilma Quille v. Blanche*, No. 26-CV-2818, 2026 WL 1453889, *5 (E.D.N.Y. May 22, 2026)); *Ampuero v. Venturella*, No. 9:26-CV-1267, 2026 WL 1983211, *5 (N.D.N.Y. July 8, 2026) (explaining that where the petitioner was arrested and subsequently moved "to a secondary location" where he was then served with the warrant, "[t]o the extent that the arrest may have occurred without a valid warrant, Respondents have not demonstrated the requisite justification for such conduct"); *see also* 8 C.F.R. § 287.8(c)(2)(ii). As pointed out in Petitioner's reply, Respondents provide no information as to when they began "target[ing]" Petitioner or decided to enforce their "operation." *See* Dkt. No. 7 at 1. The alleged "heavy traffic near a busy intersection" and presence of "local protesters" does not excuse the requirement of proper service of a warrant prior to arrest. Dkt. No. 6-4 at 2.

Finally, the Court turns to the Government's interest. The Government contends that it has "a significant interest in effectuating lawful parole termination, responding to emerging public-safety factors, and carrying out targeted enforcement operations grounded in individualized risk assessments without duplicating established custody-review mechanisms." Dkt. No. 6 at 5. As stated, courts have held that parole expiration does not warrant mandatory detention. *See, e.g.*, *Ivonin*, 2026 WL 199283, at *4; *Torrez Arce*, 2026 WL 1430509, at *1-4. Moreover, Respondents have set forth no facts suggesting an emerging public-safety concern. In the instant case, Petitioner's criminal history is minimal. *See* Dkt. No. 6-4 at 3. Petitioner was arrested on April 25, 2026, for driving while intoxicated, but he has no criminal convictions on record. *See id.* Courts "have held that noncitizens who have not been convicted of new crimes while released on bond must be provided hearings prior to being re-arrested by ICE." *O.F.C. v. Almodovar*, No. 25-CV-9816, 2026 WL 74262, *12 (S.D.N.Y. Jan. 9, 2026) (collecting cases). Additionally,

although Respondents contend that Petitioner "is considered a flight risk and public safety risk," they have presented no reasoning or justification for that conclusion. *See* Dkt. No. 6-4 at 4. Rather, they argue that Petitioner poses a danger to the community solely because ICE officers incidentally "observed" him in Schenectady, New York, rather than at his residence in Albany. *See* Dkt. No. 6 at 2. This argument is unavailing, as Respondents have not offered facts alleging any credible danger or threat to the community.

Based on the foregoing, the Court finds that Petitioner has established a due process violation and that Petitioner's continued detention is unjustified under 8 U.S.C. § 1226. Because Respondents have not offered any legitimate reason for Petitioner's detention, and because the detention violates Petitioner's constitutional rights, the Court orders Petitioner's immediate release from custody.

## IV. CONCLUSION

Accordingly, after carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) and motion (Dkt. No. 7) are **GRANTED**; and the Court further

**ORDERS** that Petitioner's request for costs and reasonable attorneys' fees is **DENIED** as premature; and the Court further

**ORDERS** that Petitioner be released from custody by October 28, 2026, at 5:00 p.m. E.S.T.; and the Court further

**ORDERS** that Respondents certify compliance with the Court's order regarding Petitioner's release no later than October 29, 2026, at 12:00 p.m. E.S.T.; and the Court further

**ORDERS** that, having considered the particular circumstances of this case and *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner shall not be re-detained without adequate notice to Petitioner and without an opportunity to be heard at a hearing where the Government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) and the burden to demonstrate by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Petitioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 28, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge